ACCEPTED
12-14-00368-CR
TWELFTH COURT OF APPEALS
TYLER, TEXAS
9/3/2015 3:26:28 PM
Pam Estes
CLERK

No. 12-14-00368-CR

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
9/3/2015 3:26:28 PM
PAM ESTES
Clerk

IN THE
COURT OF APPEALS
TWELTH DISTRICT OF TEXAS AT TYLER

JOHN CALVIN MARSHALL,
APPELLANT

V.

THE STATE OF TEXAS,
APPELLEE

APPELLEE'S BRIEF

On appeal from Cause Numbers CR11-00070
294th Judicial District Court
Van Zandt County, Texas

APPELLEE'S BRIEF

Van Zandt County Criminal District Attorney
Richard A. Schmidt, First Assistant
State Bar Number 24043907
400 S. Buffalo, Canton, TX 74103
903-567-4104 – 903-567-6258fx

Attorney for the State of Texas

1

## IDENTITIES OF PARTIES

APPELLANT:    John Calvin Marshall

Trial & Appellate Attorneys for the Appellant:

Dean White                          Nolan White
690 West Dallas,                    690 West Dallas
Canton, TX 75103                    Canton, TX 75103
dwatty@etcable.net                  nwatty@etcable.net

Attorneys for the State at Trial and on Appeal:

Richard A. Schmidt                  Chris Martin
1st Asst. Crim. Dist. Att.          Criminal District Attorney
400 S. Buffalo                      400 S. Buffalo
Canton, TX 75103                    Canton, TX 75103
rschmidt@vanzandtcounty.org         chrismartin@vanzandtcounty.org

# TABLE OF CONTENTS

PAGE

IDENTITIES OF PARTIES AND COUNSEL     2
INDEX OF AUTHORITIES     4
STATEMENT OF THE CASE     5
ISSUES PRESENTED     5

    ISSUE NUMBER ONE:     The trial court did not err by denying Appellant's motion to suppress.
    ISSUE NUMBER TWO:     The trial court did not err by permitting the State to introduce 404(b) evidence through witness Jean Mullins.
    ISSUE NUMBER THREE: The trial court acted properly by excluding the irrelevant and improper testimony of Martha Wetherholt and did not deny Appellant his right to present a defense.
    ISSUE FOUR:     The State's argument to the jury was proper and misconstrued by Appellant's brief.

SUMMARY OF THE FACTS     5

ISSUES PRESENTED WITH ARGUMENT     7

PRAYER     21

CERTIFICATE OF SERVICE     22

CERTIFICATE OF COMPLIANCE     22

# INDEX OF AUTHORITIES

PAGE

STATUTES & CODES

Tex. R. of Evid. 404(b)……………………………………… 9, 10, 12

Tex. R. of Evid. 412…………………………………………. 16, 17

Tex. R. of Evid. 511. …………………………………….... 8

TEX. CRIM. PROC. ART. 38.22(3)………………………….. 8

## CASE LAW

Alonzo v. State, 67 S.W.3d 346, 350, 2001 Tex. App. LEXIS 8489, *1 (Tex. App. Waco 2001). ……………………….. 16-18

Burden v. State, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001).. 10

Corley v. State, 987 S.W.2d 615, 617, 1999 Tex. App. LEXIS 1221, *1 (Tex. App. Austin 1999)……………………….. 12,11

Faison v. State, 59 S.W.3d 230, 235, 2001 Tex. App. LEXIS 2718, *1 (Tex. App. Tyler 2001). ……………………… 11

Gomes v. State, 9 S.W.3d 373, 379 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd)……………………………………… 9

Hinojosa v. State, 433 S.W.3d 742, 747, 2014 Tex. App. LEXIS 4884, *1, 2014 WL 1800317 (Tex. App. San Antonio 2014)…….. 20

Martin v. State, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005)…. 10

Sims v. State, 273 S.W.3d 291, 292, 2008 Tex. Crim. App. LEXIS 820, (Tex. Crim. App. 2008). ……………………………….. 10

Willover v. State, 70 S.W.3d 841, 845 (Tex.Crim. App. 2002). …. **10**

**TO THE HONORABLE JUSTICES OF THE COURT OF APPEAL:**

The State of Texas, Appellee, by and through her attorney of record, Richard A. Schmidt, files this response brief on appeal:

## STATEMENT OF THE CASE

Appellee accepts and adopts Appellant's statement of the case as outlined in Appellant's brief and incorporates it herein for all purposes.

## ISSUES PRESENTED

<u>ISSUE NUMBER ONE</u>:     The trial court did not err by denying Appellant's motion to suppress.

<u>ISSUE NUMBER TWO</u>:     The trial court did not err by permitting the State to introduce 404(b) evidence through witness Jean Mullins.

<u>ISSUE NUMBER THREE</u>: The trial court acted properly by excluding the irrelevant and improper testimony of Martha Wetherholt and did not deny his right to present a defense.

<u>ISSUE FOUR</u>:  The State's argument to the jury was proper and misconstrued by Appellant's brief.

## SUMMARY OF FACTS

The victim in this case, Carolyn Walters, was casually acquainted with Appellant, John Marshall, through her work and with business dealings with Appellants wife.  IV RR 15-16.[1]  On April 23, 2011, Appellant entered the home of Carolyn Walters without her consent or invitation.  IV RR 14.  After entering Carolyn Walters' residence, and

---

[1] RR refers to Reporter's Record; EH refers to the record of the evidentiary hearing

being confronted by Carolyn Walters as to why he was there, Appellant pushed her into a bedroom, began removing his clothing and the clothing of Carolyn Walters, pinned her to the bed, and began attempting to penetrate her vagina with his flaccid penis. IV RR 17-23.

In an attempt to get Appellant to leave, Carolyn Walters began ridiculing Appellant's impotence. IV RR 24. Appellant then got dressed and left Carolyn Walters' residence with her following behind him verbally attacking Appellant. IV RR 24-25. At no point did Carolyn Walters give Appellant consent to be in her residence and at no point did Carolyn Walters consent to sexual contact with Appellant. IV RR 24-25.

Carolyn Walters did not call the police because she did not think she would be believed due to Appellant's status in the community. IV RR 25. Ultimately, Carolyn Walters was able to make contact with Matthew Jackson, a family friend, who contacted the Canton Police Department. II RR 204. The Canton Police Department dispatched Sergeant Steve Hall to investigate a possible sexual assault to 1230 Big Rock St (the residence of Carolyn Walters). II RR 38, 40. Sergeant Hall contacted Detective Michael King who arrived on scene approximately

6

one hour later.  II RR 41.  Also arriving on scene was Carla Ward, an employee of the East Texas Crisis Center. II RR 89. Ms. Walter wouldn't communicate with the police or identify the Appellant stating only that he was a prominent member of the community and that she wouldn't be believed.  II RR 50.  Based on his knowledge of a prior incident that was sexual in nature and involving a prominent member of the community, Detective King contacted the alleged victim of that prior incident, Jean Mullins, for help in identifying a potential suspect. II RR 113.  Jean Mullins eventually spoke with Ms. Walter and convinced her to speak with police.  IV RR 29.  Ms. Walter then spoke with Detective King and relayed the events as she testified to at trial and as described above.  IV RR 31.  Jean Mullins also testified about the incident that she experienced involving Appellant.  III RR 89-111.

## ARGUMENT AND AUTHORITIES

**ISSUE NUMBER ONE:**    The trial court did not err by denying Appellant's motion to suppress.

On or about the 29th Day of April 2011, the Appellant was arrested for burglary with intent to commit sexual assault. EH RR 21.  Appellant complains that Detective Michael King, of the Canton Police Department, denied him the right to private conversation with individuals who have privilege with the Appellant.   Appellant

7

unsuccessfully attempted to contact an attorney in the presence of Detective King. EH RR 51. Appellant then contacted his wife in the presence of Detective King and had a brief conversation with her. These phone calls were recorded by Detective King and took place during the routine book in process of the Appellant and at the Appellant's request. EH RR 42-46.

The Appellant characterizes Detective King's presence and recording of Appellant's side of the conversations during the Appellant's attempt to make phone calls as a violation of the Fifth and Sixth Amendments to the Constitution of the United States, applicable State constitutional law and Article 38.22 of the Texas Code of Criminal Procedure. Although the Appellant has the right to confidential communications with counsel, that protection can be waived by a defendant. Appellant initiated the telephone calls in the presence of Detective King. The Appellant never requested a private phone or area in which to make his phone calls, nor was the Appellant denied that opportunity at a later date or time. EH RR 45, 51. The Appellant had no conversation with an attorney while in the presence of Detective King. EH RR 20-57. Any privilege enjoyed by the Appellant in the communications with his wife was voluntarily waived by the Appellant when he initiated the telephone call in the presence of Detective King. See Tex. R Evid. 511.

Article 38.22 generally conditions the evidentiary use of **a** defendant's statement stemming from custodial interrogation on

compliance with its procedural safeguards. See TEX. CRIM. PROC. ART. 38.22(3).

> However, article 38.22 does not preclude the admission of statements that do not result from custodial interrogation. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22(5) (Vernon 2005); *Morris v. State*, 897 S.W.2d 528, 531 (Tex.App.--El Paso 1995, no pet.). If either the "custodial" or the "interrogation" predicates are not met, article 38.22 does not apply.

> *Gomes v. State*, 9 S.W.3d 373, 379 (Tex. App.--Houston [14th Dist.] 1999, pet. ref'd).

In the instant case, the Appellant was in custody. However, he was not being interrogated as contemplated by article 38.22. Any statements he made in the presence of Detective King were voluntary and any privileges that may have been enjoyed by the Appellant were waived when the Appellant knowingly and voluntarily made telephone calls in the presence of Detective King. See *Id at 379.*

**ISSUE NUMBER TWO:** **The trial court did not err by permitting the State to introduce 404(b) evidence through witness Jean Mullins.**

Appellant's second issue of appeal is the trial court's ruling allowing 404(b) evidence to be introduced against Appellant through the testimony of Gene Mullins. At trial, Ms. Mullins

9

testified about an assaultive incident that she suffered at the hands of the Appellant. III RR 94-.

Generally, a trial court's decision to admit evidence is reviewed under an abuse of discretion standard. See Martin v. State, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005). The Appellate Court must uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. Willover v. State, 70 S.W.3d 841, 845 (Tex.Crim. App. 2002). An Appellate Court should not reverse a trial court's ruling admitting evidence unless that ruling falls outside the zone of reasonable disagreement. See Burden v. State, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001).

> As a general rule, "evidence of extraneous offenses is inadmissible at the guilt phase of trial to prove action in conformity therewith. Tex. R. Evid. 404(b). . . . But Rule 404(b) does allow for the admission of extraneous-offense evidence at the guilt phase of trial for specific, non-character-conformity purposes, such as to prove motive, opportunity, intent, preparation, plan, etc.

Sims v. State, 273 S.W.3d 291, 292, 2008 Tex. Crim. App. LEXIS 820, (Tex. Crim. App. 2008).

Furthermore, the Appellate Courts have held that:

Identity and the rebuttal of defenses are both valid purposes for admitting evidence under Tex. R. Evid. 404(b). To be

admissible to show identity, an extraneous offense must be so similar to the offense charged that the offenses are marked as the accused's handiwork. By raising a defensive theory, a defendant opens the door for the State to offer rebuttal testimony regarding an extraneous offense if the extraneous offense has common characteristics with the offense for which the defendant was on trial.

<u>Faison v. State</u>, 59 S.W.3d 230, 235, 2001 Tex. App. LEXIS 2718, *1 (Tex. App. Tyler 2001).

In addition, proof of intent has been held a proper use of 404(b) evidence when consent of the victim is at issue. The Court in <u>Corley v. State</u> engaged in a detailed discussion of the matter which is on point here:

> When a defendant is charged with aggravated sexual assault, the State is required to prove the defendant *intentionally* caused penetration of complainant's sexual organ without her consent. See *Wiggins v. State*, 778 S.W.2d 877, 882 (Tex. App.-Dallas 1989, pet. ref'd). When, as here, a defendant charged with aggravated sexual assault raises the defense of consent, he disputes his intent to commit the offense and thereby places his intent at issue. *Wiggins*, 778 S.W.2d at 884-85 (citing *Rubio v. State*, 607 S.W.2d 498, 501 (Tex. Crim. App. 1980)). …Evidence of other sexual assaults may be relevant to prove a defendant had the intent to commit sexual assault as charged. *See, e.g., Webb v. State,* 995 S.W.2d 295, 299 (Tex. App.-Houston [14th Dist.] 1999, no pet.) (other sexual assaults relevant to prove intent in charged sexual assault); *Corley v. State*, 987 S.W.2d 615, 619 (Tex. App.-Austin 1999, no pet.) (past attack on woman relevant to prove defendant's intent to commit attempted aggravated sexual assault); *Suarez v. State*, 901 S.W.2d 712,

721 (Tex. App.-Corpus Christi 1995, pet. ref'd) (en banc) (other sexual assault committed during medical exam relevant to prove defendant's intent to commit sexual assault during a different medical exam); *Duckworth v. State*, 833 S.W.2d 708, 711 (Tex. App.-Beaumont 1992, no pet.) (other acts of aggravated sexual assault relevant to prove intent in charged aggravated sexual assault). Here, the trial court could reasonably have determined the extraneous offense evidence was relevant to the issue of intent. Thus, we conclude the trial court did not abuse its discretion in finding the extraneous offense evidence had relevance apart from its value to show character conformity. McCoy v. State, 2000 Tex. App. LEXIS 6054, *8-9, 2000 WL 1246455 (Tex. App. Dallas Sept. 5, 2000). Where intent is a material issue and is not inferable from the act itself, evidence of other acts probative of such intent is relevant. Where the State's direct evidence, however, clearly shows the intent element of the crime and that evidence is *uncontradicted* by the defendant, the offer of other crimes is unjustified due to lack of relevancy.

Corley v. State, 987 S.W.2d 615, 617, 1999 Tex. App. LEXIS 1221, *1 (Tex. App. Austin 1999).

Here, the 404(b) testimony of Gene Mullins was relevant to the issue of identity, intent, and absence of mistake. III RR 94-. Mullins testified that sometime in late 2010 or early 2011, and prior to the case at issue here, Appellant entered the residential building that housed the Children's Advocacy Center without invitation or business to conduct. III RR 94-96. Mullins recognized Appellant from casual encounters at the Methodist Church that they both attended. III RR

12

97.    After offering Appellant a tour of the center and then giving Appellant a tour of the center, Appellant unexpectedly came up behind Mullins and began to rub her arm up to her neck and smelled her.  III RR 98.  Appellant was interrupted by a CAC volunteer and left. III RR 99.    Appellant returned to the CAC again at a later date; again, uninvited and without business to conduct.  On this occasion Mullins testified that Appellant made unwanted sexual advances and then assaulted her.  III RR 99-102.  Specifically, Appellant conveyed a desire to have an intimate relationship with Mullins.  Mullins declined and asked Appellant to leave the center.  At this point, Appellant extended his hand across the desk to apologize and shake Mullins' hand, and she accepted the hand shake.

According to Mullins', when she gave him her hand, he pulled her across the desk and she was able to stop herself from being pulled by Appellant.  A short struggle ensued and Mullins was tilted back in her chair by Appellant.  Appellant then came around the desk behind the chair and put his arm around her neck and pulled her back and began to open mouth kiss and lick her face.  III RR 100.  Mullins was able to

13

free herself from Appellant and then asked him to leave; which he did very slowly. III RR 101.

After the incident, Mullins saw Appellant driving past her house and the center on several occasions. III RR 101. Eventually, Appellant approached Mullins to apologize. III RR 101.

The testimony given by Mullins relays an incident that is very similar in nature to the actions Appellant took when he assaulted Walter. He was a casual acquaintance of both women, he showed up to their residence/business unannounced and uninvited. He made sexual advances that were rebuked. He then used force to carry out his sexual advances. After he completed his attack, he left and later apologized. It was precisely because the incidents fit the same pattern that Detective King was able to piece the two together, contact Mullins, and identify Appellant as the person who sexually assaulted Ms Walter.

Furthermore, throughout his defense, Appellant asserted that the encounter with Ms. Walter was consensual. Appellant characterized his relationship with Ms. Walter as a casual acquaintance just as the relationship between Appellant and Mullins was characterized. IV RR 105. With both Mullins and Walter, Appellant testified that he traveled

14

to their location to see if they were interested in an intimate affair. Appellant traveled to Walter's house to "see what the wink was all about." IV RR 107. With both women, Appellant made sexual advances towards the women. Likewise, both women rebuked his advances. And likewise, Appellant forced himself on the women. This pattern of behavior shows Appellants intent and absence of mistake. Both times his intent was to engage in a sexual encounter. On both occasions, he was denied consent. On both occasions, he proceeded to assault the women by force followed by an apology.

Therefore, the trial court did not err by allowing the 404(b) testimony of Gene Mullins as it was relevant, is rebutted the defense of consent, it showed a lack or absence of mistake, and it aided in the identity of the Appellant as both assaults fit a highly similar pattern or modis operandi of Appellant. Finally, the testimony was far more probative than prejudicial.

ISSUE NUMBER THREE: The trial court acted properly by excluding the irrelevant and improper testimony of Martha Wetherholt and did not deny his right to present a defense.

During the trial on the merits, Appellant called Martha Wetherholt to testify as part of his defense. RRV4 172. After Appellant elicited some testimony from Mrs. Wetherholt, counsel for the State objected to her testimony under rules 401, 602, and 412 of the Texas Rules of Evidence. A hearing was had outside the presence of the jury to determine the validity of the State's objections. After the witness was examined and cross-examined, the State re-urged its objections under Texas Rules of Evidence 401, 602, and 412 to which objections the trial court sustained and excluded Mrs. Wetherholt's testimony. Appellant offered the testimony in its entirety as his offer of proof. RRV4 172-194.

Generally, "[A] trial court's refusal to admit evidence is reviewed for abuse of discretion, which means an appellate court reviews for whether the court's ruling was within the zone of reasonable disagreement." Alonzo v. State, 67 S.W.3d 346, 350, 2001 Tex. App. LEXIS 8489, *1 (Tex. App. Waco 2001). However, in this case, the Appellant claims constitutional error in that the suppressed testimony of Martha Wetherholt prevented him from presenting a defense.

Therefore, because the question arises out of the application of a constitutional right, the basis for review is for constitutional error and must be reversed for a constitutional error unless it is determined beyond a reasonable doubt that the error did not contribute to the conviction. Id. at 361-362 (internal citations omitted from quote).

The testimony of Martha Wetherholt was offered in its entirety in Appellant's bill of exceptions and offer of proof. IV RR 172. As is obvious in the record, Wetherholt had no relevant information that would aid the trier of fact to determine the ultimate question of the Appellant's guilt as charged. Wetherholt testified that she had neither personal knowledge concerning the allegations against Appellant nor had she spoken to Appellant or Ms. Walter about the incident. IV RR 187. Her testimony was improper character testimony of Walter and her behavior well prior to the assault on April 23, 2011. Further, read in its entirety, Wetherholt could only testify that Ms. Walter had a boyfriend of two after her divorce and that she stayed out late one night during a business trip Wetherholt and Walter took together. Although not direct, this testimony was calculated to introduce testimony contrary to Tex. R. Evid. § 412. Furthermore, Wetherholt had no

personal knowledge as to the nature of any relationship Walter's had nor did she have any information pertaining to Walter's relationship or lack thereof with Appellant. Therefore, the testimony was inadmissible under the Texas Rules of Evidence and wholly irrelevant.

Finally, Appellant claims that the exclusion of the irrelevant and improper testimony of Wetherholt violated his constitutional right to present a defense. This argument fails. The undersigned can think of no matter testified to by Wetherholt would have affected the jury in their deliberations.

The standard of review is to determine beyond a reasonable doubt that the exclusion of the testimony did not contribute to the verdict. See id. Given that the majority if not all of Wetherholt's testimony failed to meet evidentiary muster and would have been excluded over proper objection, it's difficult to assume a constitutional stance when deliberating this issue. However, assuming Wetherholt's testimony was allowed to be presented to the jury in its entirety, none of it would have affected the deliberations one way or the other. A plain reading of the record shows that Wetherholt's testimony was as unnecessary for the

defense of Appellant as it was an improper attempt to back-handedly assassinate the character of Walter.

**ISSUE NUMBER FOUR:** The State's argument to the jury was proper, did not ask jurors to place themselves in the shoes of the victim, and was wholly misconstrued by Appellant.

Throughout the course of the trial on the merits, the defense strategy was to suggest consent and to attack the victim's credibility by suggesting that she failed to react to the sexual assault in a manner that is consistent with a non-consenting sexual assault victim. See RR as a whole. During closing argument, counsel for the State was attempting to rebut this defense strategy through argument that called upon the jurors to focus on the victim's testimony. During closing arguments, counsel for the State stated, with objection from the Appellant, the following:

> "How are you supposed to act when you're being sexually assaulted? I don't know. I've never been sexually assaulted. Think in your minds how you're supposed to act when you're sexually assaulted" and "How was she supposed to act? Was she supposed to fight him? Maybe."

5 RR 27-28.

The purpose of closing argument is to facilitate the jury's proper analysis of the evidence presented at trial in

19

order to arrive at a just and reasonable conclusion based solely on the evidence. Proper jury argument generally falls within one of four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. A prosecuting attorney is permitted in his argument to draw from the facts in evidence all inferences which are reasonable, fair, and legitimate, but he may not use the jury argument to get before the jury, either directly or indirectly, evidence which is outside the record. Comments which appear to cast aspersions on the character of defense counsel, and as a result, strike over counsel's shoulders at the defendant, are not within the zone of proper jury argument. When jury argument falls outside the approved areas, it will not constitute reversible error unless it is extreme or manifestly improper or injects new facts harmful to the accused into the trial proceeding.

Hinojosa v. State, 433 S.W.3d 742, 747, 2014 Tex. App. LEXIS 4884, *1, 2014 WL 1800317 (Tex. App. San Antonio 2014).

Here, the prosecutor's argument was a summation of the evidence, establishing an element of the offense, eg. "without the consent of Ms. Walter." Based on a plain reading of the record, juxtaposed and considering the defense strategies, it is reasonable and logical to conclude that these arguments were made for the purposes of calling on the jurors to make reasonable deductions from the evidence and to rebut the defensive theory of consent.

Further, the State's argument was a reasonable deduction from

the evidence and merely asked the jury to rely on a general lack of knowledge of the "appropriate" way to react to being sexually assaulted and was attempting to point out that absent a similar experience, they could not possibly substitute their assumption of how they would behave for how Ms. Walter's behaved. While in hindsight the State might concede that the argument could have been more precisely phrased, when viewed in context, it by no means rises to the level of reversible error.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Appellee prays that Appellant's request for relief be in all things denied and that mandate issue affirming the judgment and sentence rendered at trial.

Respectfully submitted,

 /S// Richard A. Schmidt_____
Richard A. Schmidt
S.B.N. 24043907
First Assistant Criminal District Attorney
Van Zandt County
400 S. Buffalo, Canton, TX 75103
903.567.4104/903.567.6258 fx

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was delivered upon the Attorney for Appellant on September 3, 2015.

 /s// Richard A. Schmidt
Richard A. Schmidt

## CERTIFICATE OF COMPLIANCE

I certify that this Brief complies with Tex. R. App. P. 9.4, specifically using 14 point Century font and contains 4,154 words in total as counted by Microsoft Word.

 /s// Richard A. Schmidt
Richard A. Schmidt